UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL    'O'   JS-6

| Case Nos. | **2:16-cv-05972-CAS** | Date | April 20, 2017 |
|---|---|---|---|
| | Bankruptcy No.: 1:11-bk-16918-MB; Adversary No.: 1:11-ap-01533-AA | | |
| Title | *IN RE: RAOUF ROAHDY KHALIL* | Page | 1 of 8 |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE |
|---|---|

| Catherine M. Jeang | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Appellant | Attorneys Present for Appellee |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) — ORDER AFFIRMING IN PART, AND VACATING AND REMANDING IN PART, THE BANKRUPTCY COURT'S AMENDED JUDGMENT AFTER REMAND**

Appellant Steven Goldman appeals from the Bankruptcy Court's Amended Judgment after Remand. Doc. 9. Appellee Raouf Roshdy Khalil filed a response in opposition, and Goldman replied. Docs. 12, 16. The Court AFFIRMS IN PART and VACATES AND REMANDS IN PART.

## I.   BACKGROUND

A detailed history of this case in set forth in Judge Morrow's Order Affirming in Part the Decision of the Bankruptcy Court and Vacating and Remanding in Part. Case No. 2:14-cv-06630-MMM (Doc. 46) (hereinafter "Morrow Order"). What follows is a summary of the pertinent facts.

Goldman and Khalil co-owned a home healthcare company called Care Level Management Group, LLC ("CLM"). *Id.* at 2. In 2007, CLM obtained a $7 million loan from 1st Century Bank. *Id.* at 4. When CLM ran into financial difficulties, 1st Century Bank indicated that it would take direct action against the company to recover the loan amount. *Id.* at 5. Goldman and Khalil entered a Settlement Agreement, dated May 5, 2008, pursuant to which Goldman agreed to pay 1st Century Bank the entire $7 million debt, in exchange for Khalil's promise to reimburse Goldman for his share of the debt over time. *Id.* at 5–6. Specifically,

Khalil agreed to "(1) sell his house in the Sherwood Country Club no later than February 28, 2009, and pay Goldman 50% of the net proceeds of . . . the sale; (2) execute a promissory note for his pro rata share of the $7 million credit line that bore interest at the rate of 5% annually, and required monthly payments not to exceed $8,000 (the payments were contingent on Khalil selling his home); (3) make $500,000 balloon payments on or before May 31, 2011 and May 31, 2014; (4) obtain a life insurance policy of not less than $1,000,000 naming Goldman as beneficiary by October 1, 2008; and (5) have his wife execute a spousal consent form." *Id.* at 6.

Khalil never made any of the payments required under the Settlement Agreement. AA 2951–52. However, he testified that he attempted to sell his house for $5,995,000, a price set by Coldwell-Bankers, and that he later lowered the price to $4.3 million after the onset of the 2008 financial crisis. AA 2963. He further testified that he made brochures and advertised the property on the internet. AA 2986. Nonetheless, he never received an offer. *Id.*[1]

In February 2009, Goldman filed an action against Khalil in Los Angeles County Superior Court, seeking to enforce the Agreement. *Id.* at 6. On June 3, 2011, just three days before the state court action was to go to trial, Khalil filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. *Id.* On September 6, 2011, Goldman filed an adversary complaint against Khalil, arguing that Khalil's debt for his share of the $7 million debt was non-dischargeable. *Id.* at 7. The bankruptcy court rejected all of Goldman's arguments. *Id.* at 8. Goldman appealed, and Judge Morrow affirmed in part and vacated and remanded in part. *Id.* at 13, 56.

Goldman appealed to the Ninth Circuit. The Ninth Circuit dismissed the appeal, holding that it lacked jurisdiction because Judge Morrow's order was not final. AA 3069. On July 25, 2016, the Bankruptcy Court issued its Amended Judgment after Remand. AA 3135–44. Goldman appealed again.

---

[1] Khalil further testified that he gave Goldman a deed of trust to his house and named him as a beneficiary in a $1,000,000 life insurance policy. AA 2969.

## II.   STANDARD OF REVIEW

A district court reviews a bankruptcy court's conclusions of law de novo; findings of fact are reviewed for clear error. Fed. R. Bankr. P. 8013; *In re Gebhart*, 621 F.3d 1206, 1209 (9th Cir. 2010). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011) (citation and quotation marks omitted). Thus, a bankruptcy court's factual determinations will be sustained unless they are illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).

## III.   ANALYSIS

Goldman argues that the bankruptcy court erred in dismissing his claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), 523(a)(6), 727(a)(2)(A), 727(a)(4) (A) & (B), 727(a)(3), and 727(a)(5). Doc. 9. Additionally, Goldman argues that the bankruptcy court erred in allowing Khalil to present rebuttal testimony despite his failure to present a case in chief. *Id.* Judge Morrow affirmed the bankruptcy court's dismissal of Goldman's claims under §§ 523(a)(2)(B), 523(a)(4), 727(a)(4) (A) & (B), 727(a)(3), and 727(a)(5), as well as its decision to consider Khalil's rebuttal testimony. Morrow Order at 35, 39, 49, 50–51, 55. In addition, Judge Morrow partially affirmed the bankruptcy court's decision with respect to Goldman's claims under §§ 523(a)(6) and 727(a)(4). *Id.* at 40, 48.

Judge Morrow's decision is binding on this Court, *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993), at least absent a showing that reconsideration is warranted in light of new material facts or a change in law, L.R 7-18. Goldman has not identified any new material facts or change in law that would justify reconsideration of any aspect of Judge Morrow's order. The appeal is dismissed to the extent it seeks to relitigate issues decided by that order. The Court proceeds to consider the remaining issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL   'O'   JS-6

| | | | |
|---|---|---|---|
| Case Nos. | 2:16-cv-05972-CAS | Date | April 20, 2017 |
| Title | IN RE: RAOUF ROAHDY KHALIL | Page | 4 of 8 |

### A. Sections 523(a)(2)(A)

A debt is not dischargeable if the debtor obtained the loan by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A). As Judge Morrow explained:

> A promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A). *In re Rubin*, 875 F.2d 755, 759 (9th Cir. 1989); *In re Barrack*, 217 B.R. 598, 606 (9th Cir. BAP 1998) (same). A promise can also be found to be fraudulent if the promisor knew or should have known of his prospective inability to perform. *See Barrack*, 217 B.R. at 606; *In re Tran*, 301 B.R. 576, 582 (Bankr. S.D. Cal. 2003).
>
> A debtor's intent to defraud is a question of fact; intent to defraud may be inferred from the totality of the circumstances. *See In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir. 1997); *Tran*, 301 B.R. at 582-83 ("Fraud is generally brought to light by consideration of circumstantial evidence. For purposes of dischargeability, fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct").

Morrow Order at 25 (alteration incorporated).

In his first appeal, Goldman argued that the debt memorialized in the Settlement Agreement was non-dischargeable because Khalil entered this agreement without any intention to repay Goldman. Judge Morrow remanded because "[t]he bankruptcy court did not make factual findings" regarding Khalil's intent at the time he entered the Settlement Agreement. *Id.*

On remand, the bankruptcy court held that Goldman could not establish promissory fraud in connection with Khalil's signing of the Settlement Agreement. The Court explained:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL    'O'   JS-6

| Case Nos. | 2:16-cv-05972-CAS | Date | April 20, 2017 |
|---|---|---|---|
| Title | IN RE: RAOUF ROAHDY KHALIL | Page | 5 of 8 |

> [Goldman] contends that [Khalil's] intent to never comply with his obligations under the settlement agreement is evidenced by the fact that [Khalil] failed to make a single payment to [Goldman]. However, as [Goldman] conceded as the July 31, 2014 trial, [Khalil] was never under an obligation to make any payments as contemplated by the settlement agreement until the eve of [Khalil's] bankruptcy, which was more than three years after the settlement agreement was signed. This circumstance, by itself, is insufficient to establish that at the time the settlement agreement was signed, [Khalil] did not intend to comply with the obligations therein. Nor did [Goldman] reasonably rely upon any such lack of intent to perform such obligations.

AA 3138.

The bankruptcy court's analysis rests on a mistaken factual premise. It is not correct that Khalil was "never under an obligation to make any payments as contemplated by the settlement agreement until . . . more than three years after the settlement agreement was signed." *Id.*[2] As Judge Morrow explained, the Settlement Agreement required Khalil to sell his house and transfer 50 percent of the proceeds to Goldman within approximately ten months of signing the Settlement Agreement. Morrow Order at 5. In addition, Khalil was under an obligation to begin making monthly payments of $8,000 "concurrently with" the payment of these proceeds. *Id.* Khalil neither sold his house nor began making the

---

[2] Nor was it accurate to say that Goldman "conceded as the July 31, 2014 trial" that Khalil was never under an obligation to make payments until more than three years after he signed the Settlement Agreement. AA 3138. In closing argument, Goldman's attorney argued that "[i]t was unequivocal that [Khalil's] house was to be sold within approximately ten months of the settlement agreement being signed and upon that sale . . . the $8,000 monthly payments would begin," and that Khalil's failure to sell the house and begin making monthly payments was "evidence . . . of his intent" in signing the Settlement Agreement. AA 2983–86.

required monthly payments. AA 2986–87. These facts could support a finding that Khalil entered the Settlement Agreement without a present intent to perform or with actual or constructive knowledge of his prospective inability to perform.

Khalil did testify that he put he attempted to sell his house for $5,995,000; that he lowered the price to $4.3 million after the onset of the 2008 financial crisis; that he made brochures and advertised the property on the internet; and that he nonetheless received no offer. If credited, this testimony could support a finding that Khalil intended to perform his obligations under the Settlement Agreement. The problem is that the bankruptcy court never made a finding on the record accepting or rejecting Khalil's testimony.

It would be improper for the Court to make a credibility determination on appeal. Accordingly, the Court **VACATES** and **REMANDS** the bankruptcy court's denial of Goldman's § 523(a)(2)(A) claim, so that the bankruptcy court can decide whether Khalil's failure to sell his house or begin making required monthly payments is evidence that he entered the Settlement Agreement without a present intent to perform or with actual or constructive knowledge of his prospective inability to perform.

### B. Section 523(a)(6)

"Section 523(a)(6) excepts from discharge debts arising from 'willful and malicious' injury by the debtor to another person." *In re Black*, 487 B.R. 202, 211 (9th Cir. BAP 2013). In his first appeal, Goldman argued that Khalil's debt was non-dischargeable under this provision because Khalil engaged in promissory fraud in connection with the Settlement Agreement. Judge Morrow remanded because the bankruptcy court did not make any findings of fact with respect to promissory fraud. Morrow Order at 40. On remand, the bankruptcy court reinstated its denial of Goldman's § 523(a)(6) claim, relying on the analysis underlying its denial of Goldman's § 523(a)(2)(A) claim. As explained, that analysis was based on a misunderstanding of the facts. Accordingly, the Court **VACATES** and **REMANDS** the bankruptcy court's denial of Goldman's § 523(a)(6) claim.

### C.     Section 727(a)(2)(A)

"A party seeking to deny the debtor a discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" Morrow Order at 41 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). Goldman argued at trial that Khalil violated § 727(a)(2) by concealing several assets with intent to hinder, delay, or defraud his creditors. The bankruptcy court found that Goldman had not shown either concealment or fraudulent intent with respect to any of these assets. *Id.* at 41 (citing Trial Transcript at 129–30). Judge Morrow affirmed in part. But "[b]ecause the bankruptcy court made no findings regarding the $150,000 loan Khalil made to Mobile Doctors 24-7," Judge Morrow "vacate[d] the judgment as to this aspect of Goldman's claim and remand[ed] for further factual findings." *Id.* at 46.

On remand, the bankruptcy court reinstated its denial of Goldman's § 727(a)(2)(A) claim. It began by reviewing the evidence. At trial, Goldman introduced two pages of tax returns from Mobile Doctors 24-7, LLC ("Mobile Doctors"). AA 3139. These tax returns included, under the line item for "Other Liabilities," an entry for a "Loan from Raouf Khalil" in the amount of $150,000.00. *Id.* Also introduced at trial was Mobile Doctor's Quick Books Check Register. *Id.* Included in the Check Register were two deposits by Namar Samy Azzam,[3] totaling $150,000.00. *Id.* at 3140. Both deposits were labeled under the account heading "Loan guar by RK." *Id.* Those are Khalil's initials. *Id.*

The bankruptcy court concluded that the $150,000.00 loan referred to on the Mobile Doctors' tax returns was not a loan from Khalil, but a loan from Namar

---

[3] There is disagreement in the record as to how to spell Mr. Azzam's first name. Mobile Doctor's Check Registry used "Namar," while Khalil's bankruptcy filing used "Narmar." The Court's research suggests that both spellings may be incorrect. *See* http://gph.ae/doctors/dr-narmer-ibrahim-samy-azzam/.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL  'O'  JS-6

| Case Nos. | 2:16-cv-05972-CAS | Date | April 20, 2017 |
|---|---|---|---|
| Title | IN RE: RAOUF ROAHDY KHALIL | | Page 8 of 8 |

Azzam to Mobile Doctors that was guaranteed by Khalil. *Id.* This conclusion was supported by the fact that Khalil listed a $150,000 loan to "Narmar Azzam C/O Mobile Doctors International" in his bankruptcy schedules as a debt owed. *Id.* at 3139. The bankruptcy court concluded that Khalil correctly reported the loan on his bankruptcy schedules. *Id.*

Goldman does not offer a coherent argument as to why this ruling should be reversed.[4] The ruling was based on a reasonable assessment of the evidence. The Court **AFFIRMS**.

## IV. CONCLUSION

The Court **AFFIRMS** the Bankruptcy Court's denial of Goldman's § 727(a)(2)(A) claim and **VACATES** and **REMANDS** its denial of his claims under §§ 523(a)(2)(A) and 523(a)(6).

00:00

CMJ

---

[4] Goldman argues "there is a wide gulf between representing an item as an 'asset' or a 'debt owed'—the two things are directly opposite . . . . Without further hearing or evidence, the Bankruptcy Court determined that the false statement was unintended and, apparently, that it was without consequence . . . ." Doc. 9 at 33. Goldman misunderstands the bankruptcy court's decision. It did not conclude that Khalid made a false statement. It concluded that the loan to Mobile Doctors was correctly reported as a debt.